UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CLAUDIA MORENO and LAURA NAJERA,
*on behalf of themselves, FLSA Collective Plaintiffs, and the Class,*

                Plaintiffs,

                v.

BROOK MEAT & PRODUCE CORP.,
    d/b/a SHOP FAIR SUPERMARKETS
207 MEAT CORP.
    d/b/a SUPER ASSOCIATED
    d/b/a SHOP FAIR WAREHOUSE
A&A MEAT & PRODUCE CORP.
    d/b/a SUPER GIGANTE FOODS
KING POLO, INC.
    d/b/a SHOP FAIR SUPERMARKETS
C. R. MEAT & PRODUCE CORP.
    d/b/a SHOP FAIR SUPERMARKETS
KING MEAT CORP.
    d/b/a SHOP FAIR SUPERMARKETS
BEACH CHANNEL MEAT & PRODUCE CORP.
    d/b/a SHOP FAIR SUPERMARKETS
CORNAGA 1801 MEAT CORP.
    d/b/a SHOP FAIR SUPERMARKETS
1331 MEAT & PRODUCE CORP.
    d/b/a SHOP FAIR SUPERMARKETS
ANIBAL RODRIGUEZ, and
ARIEL RODRIGUEZ
                Defendants.

Case No.: 1:22-cv-04070

---

### DECLARATION OF CLAUDIA MORENO

I, CLAUDIA MORENO under penalty of perjury, affirm as follows:

1. I was hired by Defendants from on or around April 27, 2021 to work as a Salad Preparer for Defendants' Supermarket located at 410 West 207th Street, New York NY 10003. However, in or around August 2021, when the "Shop Fair Warehouse" location closed, I was transferred to the "Super Gigante Foods" supermarket located at 3815 9th Avenue, New York, New

1

York 10034. Then in or around September 2021, I was again transferred to the "228 Brook Shop Fair" located at 228 Brook Avenue, Bronx, New York 10454. My employment with Defendants was terminated in or around March 30, 2022.

2. Defendants own and operated Supermarkets at the following locations:

   a) 3815 9th Avenue, New York, NY 10034 ("Super Gigante Foods");

   b) 228 Brook Ave, Bronx, NY 10454 ("228 Brook Shop Fair");

   c) 1331 St. Nicholas Avenue, New York, NY 10033 ("St. Nicholas Shop Fair");

   d) 410 West 207th Street, New York, NY 10034 ("Shop Fair Warehouse");

   e) 153-30 89th Ave, Queens, NY 11432 (153-30 89th Shop Fair");

   f) 245 Beach 20th St, Far Rockaway, NY 11691 ("245 Beach Shop Fair");

   g) 3871 Broadway, New York, NY 10032 ("3871 Broadway Shop Fair");

   h) 13-29 Beach Channel Dr., Far Rockaway, NY 11691 ("13-29 Beach Channel Shop Fair");

   i) 1801A Cornaga Ave, Far Rockaway, NY 11691 ("1801A Cornaga Shop Fair").

   (Collectively, the "Supermarkets").

3. Employees are also allowed to cover shifts at different locations. I was transferred to and worked at many of the above listed Supermarkets. The Supermarkets maintain centralized labor relations, human resources, and payroll operations, employment policies are formulated centrally by senior officials for Corporate Defendants. Defendants provide the same terms of employment to employees at all Supermarkets. Employees are subject to the same wage policies at all Supermarkets. Finally, the Supermarkets share a common look and feel, use the same logos, and specialize in providing fresh and competitively priced products.

4. Throughout my employment with Defendants, I regularly spoke with my fellow non-managerial coworkers regarding our wages. Such co-workers include, but are not limited to:

| Name | Position | Location |
|---|---|---|
| Margarito [LNU] | Produce Department | 410 West 207th Street, New York, NY 10034 |
| Laura Najera | Salad Preparer | 228 Brook Ave, Bronx, NY 10454 |
| Ruben [LNU] | Produce Stocker | 3815 9th Avenue, New York, NY 10034; and<br>153-30 89th Avenue, Queens, NY 11432 |
| Kevin [LNU] | Stocker | 410 West 207th Street, New York, NY 10034 |
| Dulce Luna | Salad Preparer | 228 Brook Ave, Bronx, NY 10454; and<br>1331 Street Nicholas Ave, New York, NY 10033 |
| Surdo [LNU] | Produce Stocker | 228 Brook Ave, Bronx, NY 10454 |

Based on my work experience and my personal observations and conversations with co-workers, I know that all employees of Defendants were subject to the same wage and hour policies. I regularly spoke with my co-workers during work and on paydays, and it was common knowledge that Defendants engaged in the practices described below.

5. From the start of my employment to in or around August 2021, I was scheduled to work six (6) days per week, from 8:00 a.m. to 6:00 p.m., for approximately sixty (60) hours per week. From August 2021 to the end of my employment, I worked six (6) days per week, from 8:00 p.m. to 3:00 p.m. for approximately forty-two (42) hours per week. Based on my personal observations and conversations, other employees employed by Defendants (including, but not limited to, individuals listed in ¶ 4 herein) also worked the same or similar hours. However, at least once every month, I was asked to stay later than my shifts on an as needed basis, especially during

the holidays. On such days when I was required to stay past my scheduled hours, my shift ended anywhere around 4:00 p.m. to 7:00 p.m.

6. Throughout my employment with Defendants, I was paid on an hourly basis by cash every week. From start of employment to in or about December 2021, I was paid at a rate of fifteen dollars ($15.00) per hour. From in or about October 2021 to the end of my employment, I was paid at an hourly rate of sixteen dollars ($16.00) per week. Based on my personal observations, other employees employed by Defendants (including, but not limited to, individuals listed in ¶ 4 herein) were compensated at similar rates on an hourly basis.

7. Throughout my employment with Defendants, Defendants automatically deducted thirty (30) minutes for meal breaks. However, due to how busy the Supermarkets were, I was never able to take a free and clear thirty (30) minute meal break. As a result of the improper automatic meal deduction, Defendants failed to compensate me for all hours worked, including overtime worked. Based on my personal observations, other employees employed by Defendants (including, but not limited to, individuals listed in ¶ 4 herein) suffered the same violations and had to work during their meal breaks.

8. I frequently discussed with other employees employed by Defendants (including, but not limited to, individuals listed in ¶ 4 herein) about Defendants' illegal policy of deducting thirty (30) minutes for meal breaks, even though we never were able to take a free and clear thirty (30) minute meal breaks. I specifically recall speaking with Ruben, Margarito, and Kevin while we were working in the produce section, and they would all complain to me about how much work they had to do and how it was impossible to actually take a meal break, despite having those thirty (30) minutes automatically, and unfairly, deducted from our wages.

4

9.     Throughout my employment with Defendants, I was required to start my day at the "228 Brook Shop Fair" location. However, mid-shift I was always instructed to travel and cover other employees' shifts at the "Super Gigante Foods" supermarket located at 3815 9th Avenue, New York, NY 10034. However, whenever I was required to cover shifts at a different supermarket location, Defendants would calculate my hours at each location separately so as to avoid paying any overtime, i.e. I would work thirty-five (35) hours at "228 Brook Shop Fair", ten (10) hours at "Super Gigante Foods," and be paid all forty-five (45) hours at a straight time rate instead of forty (40) regular hours and five (5) overtime hours. Based on my personal observations, other employees who were required to work at multiple Supermarkets (including, but not limited to, individuals listed in ¶ 4 herein) similarly were not paid for their proper overtime.

10.     I regularly discussed with Defendants' other employees (including, but not limited to, individuals listed in ¶ 4 herein) Defendants' wrongful policy of calculating their employees' daily total of compensable hours separately for different Supermarket locations that they worked at in order to avoid paying any overtime hours. I specifically remember speaking with Ruben [LNU] about this matter and how ridiculously unfair it was, because he had his hours worked at each store location paid separately as well, and as a result, was also deprived of his properly earned overtime hours.

11.     Moreover, I was never paid for my time travelling between the Supermarkets. Based on my personal observations, other employees who were required to travel between Supermarkets (including, but not limited to, individuals listed in ¶ 4 herein) similarly were not paid for their travel time.

12.     Throughout my employment with Defendants, I regularly worked shifts exceeding ten (10) hours in duration, however, Defendants failed to provide me with my spread of hours

premium for those shifts. Based on my personal observations and conversations with co-workers, other employees (including, but not limited to, individuals listed in ¶ 4 herein) were similarly not paid spread of hours premium when working shifts exceeding ten (10) hours in duration.

13. When I was hired by Defendants, I did not receive a wage and hour notice as required under New York Labor Law. Based on my personal observations and conversations, no other employee (including, but not limited to, individuals listed in ¶ 4 herein) ever received a written wage and hour notice at the time of hiring or thereafter, informing them of their rates of pay or other requirements under the New York Labor Law.

14. During my employment with Defendants, I received wage statements from Defendants, but they failed to state the correct number of hours that I worked each week. Based on my personal observations and conversations with my co-workers, other employees (including, but not limited to, individuals listed in ¶ 4 herein) received similar incorrect proper wage statements.

15. I agree to act as a class representative and am of sound mind and body.

16. I do not have any conflicts with prospective class members.

[REST OF PAGE LEFT INTENTIONALLY BLANK]

I affirm, under penalty of perjury, that the above and foregoing information is true and correct.

Dated: 9/7/2022

DocuSigned by:

CLAUDIA MORENO

**TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS**
**DISTRITO SUR DE NUEVA YORK**

---

CLAUDIA MORENO y LAURA NAJERA,
*en nombre de ellos mismos, FLSA Demandantes Colectivos y la clase,*

                Demandantes,

                v.

BROOK MEAT & PRODUCE CORP.,
    d/b/a SHOP FAIR SUPERMARKETS
207 MEAT CORP.
    d/b/a SUPER ASSOCIATED
    d/b/a SHOP FAIR WAREHOUSE
A&A MEAT & PRODUCE CORP.
    d/b/a SUPER GIGANTE FOODS
KING POLO, INC.
    d/b/a SHOP FAIR SUPERMARKETS
C. R. MEAT & PRODUCE CORP.
    d/b/a SHOP FAIR SUPERMARKETS
KING MEAT CORP.
    d/b/a SHOP FAIR SUPERMARKETS
BEACH CHANNEL MEAT & PRODUCE CORP.
    d/b/a SHOP FAIR SUPERMARKETS
CORNAGA 1801 MEAT CORP.
    d/b/a SHOP FAIR SUPERMARKETS
1331 MEAT & PRODUCE CORP.
    d/b/a SHOP FAIR SUPERMARKETS
ANIBAL RODRIGUEZ, y
ARIEL RODRIGUEZ
                Acusados.

Número de caso: 1:22-cv-04070

---

**DECLARACIÓN DE CLAUDIA MORENO**

      Yo, CLAUDIA MORENO bajo pena de perjurio, afirmo lo siguiente:

      1.    Los demandados me contrataron desde el 27 de abril de 2021 o alrededor de esa fecha para trabajar como preparador de ensaladas para el supermercado de los demandados ubicado en 410 West 207th Street, Nueva York NY 10003. Sin embargo, alrededor de agosto de 2021, cuando la "Feria de compras Warehouse" cerró, me transfirieron al supermercado "Super

1

Gigante Foods" ubicado en 3815 9th Avenue, New York, New York 10034. Luego, alrededor de septiembre de 2021, me transfirieron nuevamente al "228 Brook Shop Fair" ubicado en 228 Brook Avenue, Bronx, New York 10454. Mi empleo con los Demandados finalizó alrededor del 30 de marzo de 2022.

2. Los demandados poseen y operan supermercados en las siguientes ubicaciones:

a) 3815 9th Avenue, Nueva York, NY 10034 ("Super Gigante Foods");

b) 228 Brook Ave, Bronx, NY 10454 ("228 Brook Shop Fair");

c) 1331 St. Nicholas Avenue, Nueva York, NY 10033 ("St. Nicholas Shop Fair");

d) 410 West 207th Street, New York, NY 10034 ("Shop Fair Warehouse");

e) 153-30 89th Ave, Queens, NY 11432 (153-30 89th Shop Fair");

f) 245 Beach 20th St, Far Rockaway, NY 11691 ("245 Beach Shop Fair");

g) 3871 Broadway, Nueva York, NY 10032 ("3871 Broadway Shop Fair");

h) 13-29 Beach Channel Dr., Far Rockaway, NY 11691 ("13-29 Feria de tiendas de Beach Channel");

i) 1801A Cornaga Ave, Far Rockaway, NY 11691 ("1801A Cornaga Shop Fair").

(Colectivamente, los "Supermercados").

3. Los empleados también pueden cubrir turnos en diferentes ubicaciones. Fui transferido y trabajé en muchos de los supermercados mencionados anteriormente. Los Supermercados mantienen relaciones laborales, recursos humanos y operaciones de nómina centralizadas, las políticas de empleo son formuladas centralmente por altos funcionarios de las Empresas Demandadas. Los Demandados brindan las mismas condiciones de empleo a los empleados en todos los Supermercados. Los empleados están sujetos a las mismas políticas salariales en todos los Supermercados. Finalmente, los Supermercados comparten una apariencia

común, utilizan los mismos logotipos y se especializan en ofrecer productos frescos y a precios competitivos.

4. A lo largo de mi empleo con los Demandados, hablé regularmente con mis compañeros de trabajo no gerenciales sobre nuestros salarios. Tales compañeros de trabajo incluyen, pero no se limitan a:

| Nombre | Posición | Ubicación |
|---|---|---|
| Margarito [AD] | Departamento de producción | 410 calle 207 Oeste, Nueva York, NY 10034 |
| Laura Najera | Preparador de ensaladas | 228 Brook Ave, Bronx, Nueva York 10454 |
| Ruben [AD] | Producir almacenista | 3815 ave., 9, Nueva York, NY 10034; y 153-30 Ave., 89, Queens, NY 11432 |
| Kevin [AD] | Almacenista | 410 calle 207 Oeste, Nueva York, NY 10034 |
| Dulce Luna | Preparador de ensaladas | 228 Brook Ave, Bronx, Nueva York 10454; y 1331 calle Nicholas Ave, Nueva York, NY 10033 |
| Surdo [AD] | Producir almacenista | 228 Brook Ave, Bronx, Nueva York 10454 |

En base a mi experiencia laboral y mis observaciones personales y conversaciones con compañeros de trabajo, sé que todos los empleados de los Demandados estaban sujetos a las mismas políticas de salarios y horarios. Hablé regularmente con mis compañeros de trabajo durante el trabajo y los días de pago, y era de conocimiento común que los Demandados participaron en las prácticas que se describen a continuación.

5. Desde el comienzo de mi empleo hasta agosto de 2021 o alrededor de esa fecha, estaba programado para trabajar seis (6) días a la semana, de 8:00 a.m. a 6:00 p.m., durante aproximadamente sesenta (60) horas por semana. Desde agosto de 2021 hasta el final de mi

3

empleo, trabajé seis (6) días a la semana, de 8:00 p.m. a las 3:00 p.m. durante aproximadamente cuarenta y dos (42) horas a la semana. Según mis observaciones y conversaciones personales, otros empleados; empleados por los Demandados (incluidos, entre otros, las personas enumeradas en el ¶ 4 del presente) también trabajaron el mismo horario o un horario similar. Sin embargo, al menos una vez al mes, se me pedía que me quedara más tarde de mis turnos según fuera necesario, especialmente durante las vacaciones. En los días en que tenía que quedarme más allá de las horas programadas, mi turno terminaba alrededor de las 4:00 p.m. a las 7:00 p.m.

6. A lo largo de mi empleo con los Demandados, me pagaron por hora en efectivo cada semana. Desde el comienzo del empleo hasta diciembre de 2021 o alrededor de esa fecha, me pagaron a razón de quince dólares ($15.00) por hora. Desde octubre de 2021 o alrededor de esa fecha hasta el final de mi empleo, me pagaron a una tarifa por hora de dieciséis dólares ($16.00) por semana. Según mis observaciones personales, otros empleados; empleados por los Demandados (incluidos, entre otros, las personas enumeradas en el ¶ 4 del presente) fueron compensados a tarifas similares por hora.

7. A lo largo de mi empleo con los Demandados, los Demandados dedujeron automáticamente treinta (30) minutos para las pausas para comer. Sin embargo, debido a lo ocupados que estaban los supermercados, nunca pude tomarme un descanso libre y claro de treinta (30) minutos para comer. Como resultado de la deducción automática incorrecta de comidas, los Demandados no me compensaron por todas las horas trabajadas, incluidas las horas extra trabajadas. Según mis observaciones personales, otros empleados; empleados por los Demandados (incluidos, entre otros, las personas enumeradas en el ¶ 4 del presente) sufrieron las mismas infracciones y tuvieron que trabajar durante sus descansos para comer.

8. Hablé con frecuencia con otros empleados; empleados por los Demandados (incluidos, entre otros, las personas enumeradas en el ¶ 4 del presente) sobre la política ilegal de los Demandados de deducir treinta (30) minutos para los descansos para comer, aunque nunca pudimos tomarlos. descansos libres y claros de treinta (30) minutos para comer. Recuerdo específicamente haber hablado con Rubén, Margarito y Kevin mientras trabajábamos en la sección de frutas y verduras, y todos se quejaban de la cantidad de trabajo que tenían que hacer y de cómo era imposible tomar un descanso para comer, a pesar de tener esos treinta (30) minutos automáticamente, e injustamente, deducidos de nuestro salario.

9. A lo largo de mi empleo con los Demandados, se me exigió que comenzara mi día en el lugar "228 Brook Shop Fair". Sin embargo, a mitad de turno siempre me indicaban que viajara y cubriera los turnos de otros empleados en el supermercado "Super Gigante Foods" ubicado en 3815 9th Avenue, New York, NY 10034. Sin embargo, cada vez que tenía que cubrir turnos en un supermercado diferente ubicación, los Demandados calcularían mis horas en cada ubicación por separado para evitar pagar horas extras, es decir, trabajaría treinta y cinco (35) horas en "228 Brook Shop Fair", diez (10) horas en "Super Gigante Foods", y se le pagarán las cuarenta y cinco (45) horas a una tarifa de tiempo regular en lugar de cuarenta (40) horas regulares y cinco (5) horas extra. Según mis observaciones personales, a otros empleados que debían trabajar en varios Supermercados (incluidos, entre otros, los individuos enumerados en el ¶ 4 del presente) tampoco se les pagó por las horas extra correspondientes.

10. Hablé regularmente con los otros empleados de los Demandados (incluidos, entre otros, las personas enumeradas en el ¶ 4 del presente) sobre la política indebida de los Demandados de calcular el total diario de horas compensables de sus empleados por separado para las diferentes ubicaciones de Supermercados en las que trabajaban a fin de para evitar pagar horas extras.

5

Recuerdo específicamente haber hablado con Rubén [AD] sobre este asunto y lo ridículamente injusto que era, porque sus horas trabajadas en cada tienda también se pagaban por separado y, como resultado, también se le privaron de las horas extras debidamente ganadas.

11. Además, nunca me pagaron por mi tiempo de viaje entre los Supermercados. Según mis observaciones personales, a otros empleados que debían viajar entre Supermercados (incluidos, entre otros, los individuos enumerados en el ¶ 4 del presente) tampoco se les pagó por su tiempo de viaje.

12. A lo largo de mi empleo con los Demandados, trabajé regularmente en turnos de más de diez (10) horas de duración, sin embargo, los Demandados no me proporcionaron mi prima de distribución de horas para esos turnos. En base a mis observaciones personales y conversaciones con compañeros de trabajo, a otros empleados (incluidos, entre otros, las personas enumeradas en el ¶ 4 del presente) tampoco se les pagó la prima de distribución de horas cuando los turnos de trabajo excedían las diez (10) horas de duración.

13. Cuando fui contratado por los Demandados, no recibí un aviso de salario y horas como lo requiere la Ley Laboral de Nueva York. Con base en mis observaciones y conversaciones personales, ningún otro empleado (incluidos, entre otros, los individuos enumerados en el ¶ 4 del presente) recibió un aviso por escrito de salarios y horas en el momento de la contratación o posteriormente, informándoles de sus tasas de pago o otros requisitos bajo la Ley Laboral de Nueva York.

14. Durante mi empleo con los Demandados, recibí declaraciones de salarios de los Demandados, pero no indicaron la cantidad correcta de horas que trabajé cada semana. Con base en mis observaciones personales y conversaciones con mis compañeros de trabajo, otros

DocuSign Envelope ID: 9C64A6A9-91DD-45CF-8790-F43D5217BB4E

empleados (incluidos, entre otros, las personas enumeradas en el ¶ 4 del presente) recibieron declaraciones de salarios apropiadas incorrectas similares.

15. Estoy de acuerdo en actuar como representante de la clase y tengo la mente y el cuerpo sanos.

16. No tengo ningún conflicto con posibles miembros de la clase.

[EL RESTO DE LA PÁGINA SE DEJÓ EN BLANCO INTENCIONALMENTE]

Afirmo, bajo pena de perjurio, que la información anterior y anterior es verdadera y correcta.

Fecha: 9/7/2022

DocuSigned by:

CLAUDIA MORENO