UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CLAUDIA MORENO and LAURA NAJERA,
*on behalf of themselves, FLSA Collective Plaintiffs, and the Class,*

          Plaintiffs,

v.

BROOK MEAT & PRODUCE CORP.,
    d/b/a SHOP FAIR SUPERMARKETS
207 MEAT CORP.
    d/b/a SUPER ASSOCIATED
    d/b/a SHOP FAIR WAREHOUSE
A&A MEAT & PRODUCE CORP.
    d/b/a SUPER GIGANTE FOODS
KING POLO, INC.
    d/b/a SHOP FAIR SUPERMARKETS
C. R. MEAT & PRODUCE CORP.
    d/b/a SHOP FAIR SUPERMARKETS
KING MEAT CORP.
    d/b/a SHOP FAIR SUPERMARKETS
BEACH CHANNEL MEAT & PRODUCE CORP.
    d/b/a SHOP FAIR SUPERMARKETS
CORNAGA 1801 MEAT CORP.
    d/b/a SHOP FAIR SUPERMARKETS
1331 MEAT & PRODUCE CORP.
    d/b/a SHOP FAIR SUPERMARKETS
ANIBAL RODRIGUEZ, and
ARIEL RODRIGUEZ
          Defendants.

Case No.: 1:22-cv-04070

---

## DECLARATION OF LAURA NAJERA

I, LAURA NAJERA under penalty of perjury, affirm as follows:

1.    I was hired by Defendants from in or around January 2021 to work in the Produce Department of Defendants' Supermarket located at 228 Brook Avenue, Bronx, New York 10454. My employment with Defendants terminated in or around February 2022.

1

2. From my time working, I learned Defendants owned and operated a chain of Supermarkets in the state of New York. Defendants own and operate Supermarkets at the following locations:

a) 3815 9th Avenue, New York, NY 10034 ("Super Gigante Foods");

b) 228 Brook Ave, Bronx, NY 10454 ("228 Brook Shop Fair");

c) 410 West 207th Street, New York, NY 10034 ("Shop Fair Warehouse");

d) 153-30 89th Ave, Queens, NY 11432 (153-30 89th Shop Fair");

e) 245 Beach 20th St, Far Rockaway, NY 11691 ("245 Beach Shop Fair");

f) 3871 Broadway, New York, NY 10032 ("3871 Broadway Shop Fair");

g) 13-29 Beach Channel Dr., Far Rockaway, NY 11691 ("13-29 Beach Channel Shop Fair");

h) 1801A Cornaga Ave, Far Rockaway, NY 11691 ("1801A Cornaga Shop Fair");

i) 1331 Street Nicholas Ave, New York, NY 10033 ("1331 Nicholas Shop Fair").

(Collectively, the "Supermarkets").

3. From my experience and understanding, the Supermarkets are all operated by Individual Defendants Anibal Rodriguez and Ariel Rodriguez, who are the owners of all the Supermarkets.

4. It was known by all employees, including those listed above, that they were able to transfer between Supermarkets as needed. They would usually be asked to fill in for another employee between locations. Also, it was known by all employees that both Ariel Rodriguez and Anibal Rodriguez were able to go to all locations and give instructions to the employees. Employees are readily transferred because the employment policies are the same for all locations.

5. Throughout my employment with Defendants, I regularly spoke with my fellow non-managerial coworkers regarding our wages. Such co-workers include, but are not limited to:

| Name | Position | Location |
| --- | --- | --- |
| Claudia Moreno | Salad Preparer | 410 West 207th Street, New York, NY 1003; 3815 9th Avenue, New York, NY 10034; and 228 Brook Avenue, Bronx, New York 10454 |
| Gabriel [LNU] | Produce Department | 228 Brook Avenue, Bronx, New York 10454; and 3871 Broadway, New York, NY 10032 |

Based on my work experience and my personal observations and conversations with co-workers, I know that all employees of Defendants were subject to the same wage and hour policies. I regularly spoke with my co-workers during work and on paydays, and it was common knowledge that Defendants engaged in the practices described below.

6. Throughout my employment with Defendants, I was scheduled to work six (6) days per week, from 8:00 a.m. to 3:00 p.m., for approximately forty-two (42) hours per week. Starting in or about August 2021, approximately once every two weeks, I was required to stay late past my shift. On those occasions, I was required to stay until approximately 6:00 p.m. Based on my personal observations and conversations, other employees employed by Defendants (including, but not limited to, individuals listed in ¶ 5 herein) also worked the same or similar hours.

7. For the first month of my employment with Defendants, I was paid on an hourly basis by cash every week, at a rate of fifteen dollars ($15.00) per hour. However, after about a month of being compensated only in cash, I began receiving my compensation through checks. Approximately two (2) weeks before my employment was terminated, Defendants began compensating me in cash again. Based on my personal observations, other employees employed

by Defendants (including, but not limited to, individuals listed in ¶ 5 herein) were compensated at similar rates on an hourly basis by Defendants.

8. Throughout my employment with Defendants, Defendants automatically deducted thirty (30) minutes for meal breaks. However, due to how busy the Supermarkets were, I was never able to take free and clear thirty (30) minute meal breaks. As a result of such improper automatic meal deduction, Defendants failed to compensate me for all hours worked, including overtime worked. Based on my personal observations, other employees employed by Defendants (including, but not limited to, individuals listed in ¶ 5 herein) suffered the same violations and had to work during their meal breaks.

9. I frequently discussed with other employees (including, but not limited to, individuals listed in ¶ 5 herein) Defendants' illegal policy of deducting thirty (30) minutes for meal breaks, even though we never were able to take free and clear thirty (30) minute meal breaks. I specifically remember speaking with Gabriel [LNU], both at work and on the phone, about how unfair it was that we would always have to work through our meal breaks despite the fact that Defendants were still deducting thirty (30) minutes from our wages

10. Throughout my employment with Defendants, I occasionally worked shifts exceeding ten (10) hours in duration, however, Defendants failed to provide me with my spread of hours premium for those shifts. Based on my personal observations and conversations with co-workers, other employees (including, but not limited to, individuals listed in ¶ 5 herein) were similarly not paid spread of hours premium when working shifts exceeding ten (10) hours in duration.

11. Throughout my employment with Defendants, I was partially compensated through cash and partially in checks. Further, Defendants failed to withhold my wages for tax purposes. Based on my personal observations and conversations with co-workers, other employees (including,

but not limited to, individuals listed in ¶ 5 herein) were similarly paid in cash and by check, and Defendants failed to withhold all the legally obligated taxes.

12. When I was hired by Defendants, I did not receive a wage and hour notice as required under New York Labor Law. Based on my personal observations and conversations, no other employee (including, but not limited to, individuals listed in ¶ 5 herein) ever received a written wage and hour notice at the time of hiring or thereafter, informing them of their rates of pay or other requirements under the New York Labor Law.

13. During my employment with Defendants, I received wage statements from Defendants, but they failed to state the correct number of hours that I worked each week. Based on my personal observations and conversations with my co-workers, other employees (including, but not limited to, individuals listed in ¶ 5 herein) similarly received incorrect wage statements.

14. I agree to act as a class representative and am of sound mind and body.

15. I do not have any conflicts with prospective class members.


[REST OF PAGE LEFT INTENTIONALLY BLANK]

I affirm, under penalty of perjury, that the above and foregoing information is true and correct.

Dated: 9/8/2022

DocuSigned by:

*Laura N*
4C1B8B2C04FA4I5... LAURA NAJERA

**TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS**
**DISTRITO SUR DE NUEVA YORK**

---

CLAUDIA MORENO y LAURA NAJERA,
*en nombre de ellos mismos, FLSA Demandantes Colectivos y la clase,*

                     Demandantes,

                     v.

BROOK MEAT & PRODUCE CORP.,
    d/b/a SHOP FAIR SUPERMARKETS
207 MEAT CORP.
    d/b/a SUPER ASSOCIATED
    d/b/a SHOP FAIR WAREHOUSE
A&A MEAT & PRODUCE CORP.
    d/b/a SUPER GIGANTE FOODS
KING POLO, INC.
    d/b/a SHOP FAIR SUPERMARKETS
C. R. MEAT & PRODUCE CORP.
    d/b/a SHOP FAIR SUPERMARKETS
KING MEAT CORP.
    d/b/a SHOP FAIR SUPERMARKETS
BEACH CHANNEL MEAT & PRODUCE CORP.
    d/b/a SHOP FAIR SUPERMARKETS
CORNAGA 1801 MEAT CORP.
    d/b/a SHOP FAIR SUPERMARKETS
1331 MEAT & PRODUCE CORP.
    d/b/a SHOP FAIR SUPERMARKETS
ANIBAL RODRIGUEZ, y
ARIEL RODRIGUEZ
                   Acusados.

Número de caso: 1:22-cv-04070

---

## DECLARACIÓN DE LAURA NAJERA

Yo, LAURA NAJERA bajo pena de perjurio, afirmo lo siguiente:

1.    Los Demandados me contrataron alrededor de enero de 2021 para trabajar en el Departamento de Productos del Supermercado de los Demandados ubicado en 228 Brook Avenue, Bronx, Nueva York 10454. Mi empleo con los Demandados finalizó alrededor de febrero de 2022.

1

2. Durante mi tiempo de trabajo, supe que los Demandados poseían y operaban una cadena de Supermercados en el estado de Nueva York. Los Demandados poseen y operan Supermercados en las siguientes ubicaciones:

a) 3815 9th Avenue, Nueva York, NY 10034 ("Super Gigante Foods");

b) 228 Brook Ave, Bronx, NY 10454 ("228 Brook Shop Fair");

c) 410 West 207th Street, New York, NY 10034 ("Shop Fair Warehouse");

d) 153-30 89th Ave, Queens, NY 11432 (153-30 89th Shop Fair");

e) 245 Beach 20th St, Far Rockaway, NY 11691 ("245 Beach Shop Fair");

f) 3871 Broadway, Nueva York, NY 10032 ("3871 Broadway Shop Fair");

g) 13-29 Beach Channel Dr., Far Rockaway, NY 11691 ("13-29 Feria de tiendas de Beach Channel");

h) 1801A Cornaga Ave, Far Rockaway, NY 11691 ("1801A Cornaga Shop Fair");

i) 1801A Cornaga Ave, Far Rockaway, NY 11691 ("1801A Cornaga Shop Fair"). (Colectivamente, los "Supermercados").

3. Según mi experiencia y entendimiento, todos los Supermercados son operados por los Demandados Individuales Aníbal Rodríguez y Ariel Rodríguez, quienes son los dueños de todos los Supermercados.

4. Todos los empleados, incluidos los mencionados anteriormente, sabían que podían hacer transferencias entre Supermercados según fuera necesario. Por lo general, se les pediría que reemplazaran a otro empleado entre ubicaciones. Asimismo, fue de conocimiento de todos los empleados que tanto Ariel Rodríguez como Aníbal Rodríguez pudieron acudir a todos los lugares y dar instrucciones a los empleados. Los empleados se transfieren fácilmente porque las políticas de empleo son las mismas para todas las ubicaciones.

5. A lo largo de mi empleo con los Demandados, hablé regularmente con mis compañeros de trabajo no gerenciales sobre nuestros salarios. Tales compañeros de trabajo incluyen, pero no se limitan a:

| Nombre | Posición | Ubicación |
|---|---|---|
| Claudia Moreno | Preparador de ensaladas | 410 calle 207 Oeste, Nueva York, NY 1003;<br>3815 ave., 9, Nueva York, NY 10034; y<br>228 Brook ave., Bronx, Nueva York 10454 |
| Gabriel [AD] | Departamento de producción | 228 Brook ave., Bronx, Nueva York 10454; y<br>3871 Broadway, Nueva York, NY 10032 |

En base a mi experiencia laboral y mis observaciones personales y conversaciones con compañeros de trabajo, sé que todos los empleados de los Demandados estaban sujetos a las mismas políticas de salarios y horarios. Hablé regularmente con mis compañeros de trabajo durante el trabajo y los días de pago, y era de conocimiento común que los Demandados participaron en las prácticas que se describen a continuación.

6. A lo largo de mi empleo con los Demandados, estaba programado para trabajar seis (6) días a la semana, de 8:00 a.m. a 3:00 p.m., durante aproximadamente cuarenta y dos (42) horas por semana. A partir de agosto de 2021 o alrededor de esa fecha, aproximadamente una vez cada dos semanas, debía quedarme hasta más tarde de mi turno. En esas ocasiones, tenía que quedarme hasta las 6:00 p.m. aproximadamente. Según mis observaciones y conversaciones personales, otros empleados; empleados por los Demandados (incluidos, entre otros, los individuos enumerados en el ¶ 5 del presente) también trabajaron el mismo horario o un horario similar.

7. Durante el primer mes de mi empleo con los Demandados, me pagaron por hora en efectivo todas las semanas, a razón de quince dólares ($15.00) por hora. Sin embargo, después de

3

aproximadamente un mes de ser compensado solo en efectivo, comencé a recibir mi compensación a través de cheques. Aproximadamente dos (2) semanas antes de que terminaran mi empleo, los Demandados comenzaron a compensarme en efectivo nuevamente. Según mis observaciones personales, los Demandados compensaron a otros empleados; empleados por los Demandados (incluidos, entre otros, los individuos enumerados en el ¶ 5 del presente) a tarifas similares por hora.

8. A lo largo de mi empleo con los Demandados, los Demandados dedujeron automáticamente treinta (30) minutos para las pausas para comer. Sin embargo, debido a lo ocupados que estaban los supermercados, nunca pude tomar descansos libres y claros de treinta (30) minutos para comer. Como resultado de tal deducción automática indebida de comidas, los Demandados no me compensaron por todas las horas trabajadas, incluidas las horas extra trabajadas. Según mis observaciones personales, otros empleados; empleados por los Demandados (incluidos, entre otros, las personas enumeradas en el ¶ 5 del presente) sufrieron las mismas infracciones y tuvieron que trabajar durante sus descansos para comer.

9. Hablé con frecuencia con otros empleados (incluidos, entre otros, las personas enumeradas en el ¶ 5 del presente) sobre la política ilegal de los Demandados de deducir treinta (30) minutos para las pausas para comer, aunque nunca pudimos tomar treinta minutos libres y claros. (30) minutos de descanso para comer. Recuerdo específicamente haber hablado con Gabriel [AD], tanto en el trabajo como por teléfono, sobre lo injusto que era que siempre tuviéramos que trabajar durante nuestros descansos para comer a pesar de que los Demandados seguían deduciendo treinta (30) minutos de nuestro salario.

10. A lo largo de mi empleo con los Demandados, ocasionalmente trabajé en turnos de más de diez (10) horas de duración, sin embargo, los Demandados no me proporcionaron mi prima

4

de distribución de horas para esos turnos. En base a mis observaciones personales y conversaciones con compañeros de trabajo, a otros empleados (incluidos, entre otros, las personas enumeradas en el ¶ 5 del presente) tampoco se les pagó la prima de distribución de horas cuando los turnos de trabajo excedían las diez (10) horas de duración.

11. A lo largo de mi empleo con los Demandados, fui compensado parcialmente en efectivo y parcialmente en cheques. Además, los Demandados no retuvieron mi salario a efectos fiscales. En base a mis observaciones personales y conversaciones con compañeros de trabajo, otros empleados (incluidos, entre otros, las personas enumeradas en el ¶ 5 del presente) recibieron un pago similar en efectivo y con cheque, y los Demandados no retuvieron todos los impuestos legalmente obligados.

12. Cuando fui contratado por los Demandados, no recibí un aviso de salario y horas como lo requiere la Ley Laboral de Nueva York. Con base en mis observaciones y conversaciones personales, ningún otro empleado (incluidos, entre otros, las personas enumeradas en el ¶ 5 del presente) recibió un aviso por escrito de salarios y horas en el momento de la contratación o posteriormente, informándoles de sus tarifas de pago u otros requisitos bajo la Ley Laboral de Nueva York.

13. Durante mi empleo con los Demandados, yo recibí comprobantes de salarios de los Demandados, pero no indicaron la cantidad correcta de horas que trabajé cada semana. En base a mis observaciones personales y conversaciones con mis compañeros de trabajo, otros empleados (incluidos, entre otros, las personas enumeradas en el ¶ 5 del presente) recibieron declaraciones de salarios incorrectas de manera similar.

14. Acepto actuar como representante de la clase y tengo la mente y el cuerpo sanos.

15. No tengo ningún conflicto con posibles miembros de la clase.

5

Afirmo, bajo pena de perjurio, que la información anterior y anterior es verdadera y correcta.

Fecha: 9/8/2022

LAURA NAJERA

6